IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| KIM SUZANNE LINDVALD, | ) | CIV. NO. 06-00011 JMS-BMK |
| | ) | |
| Plaintiff, | ) | FINDINGS AND |
| | ) | RECOMMENDATION TO |
| vs. | ) | DISMISS AMENDED |
| | ) | COMPLAINT AND DENY |
| DEPARTMENT OF PUBLIC | ) | MOTIONS FOR TEMPORARY |
| SAFETY, et al., | ) | RESTRAINING ORDER, |
| | ) | PRELIMINARY INJUNCTION, |
| Defendants. | ) | AND ACCESS TO LAW LIBRARY |
| _____ | ) | |

**FINDINGS AND RECOMMENDATION TO DISMISS AMENDED
COMPLAINT AND DENY MOTIONS FOR TEMPORARY RESTRAINING
ORDER, PRELIMINARY INJUNCTION, AND ACCESS TO LAW
LIBRARY**

On January 10, 2006, *pro se* plaintiff Kim Suzanne Lindvald commenced

this prisoner civil rights action pursuant to 42 U.S.C. §§ 1983 & 1997e(e).[1]  On

March 2, 2006, Lindvald filed her second amended complaint in this action

("Amended Complaint").[2]  Lindvald names the Hawaii Department of Public

Safety's ("DPS") prison officials and employees, Dr. John Pertzer, a DPS prison

psychologist, Haneefbilal Abdul Shafiq, Lindvald's case manager, and John

_____

[1]Section 1997e does not create a separate cause of action, but is simply an
enabling statute governing suits filed by prisoners.

[2]On March 8, 2006, Lindvald was granted *in forma pauperis* status.

Tumminello, Shafiq's supervisor, as defendants to this action (collectively "Defendants").[3]  All Defendants are named in their official and individual capacities.

Since Lindvald commenced this action she has filed numerous documents, letters, and motions.  (*See* Docket Nos. 5, 8, 9, 11, 14, 15, 16, 17, 18, 19, 21, 23, 24, 29, 30, 31, 32, and 33.)  On June 14, 2006, the court filed a large array of such documents.  (*See* Docket Nos. 32-33.)  Among these, was one document titled "Complaint: summons Motion for temporary restraining order and affidavit for notice of motions seeking preliminary injunctions" ("TRO"), and another untitled document which is construed as a motion for access to the law library ("Motion for Access").[4]

---

[3]Lindvald was incarcerated at the Women's Community Correctional Center ("WCCC") when she instituted this suit and when the actions she complains of allegedly took place.  She is now incarcerated at Otter Creek Correctional Center ("Otter Creek"), located in Wheelwright, Kentucky.

[4]The Motion for Access also: (1) requests the court inspect Lindvald's exhibits and determine why her "copies" have not been served on Defendants; (2) moves to "file affidavits or the warrants of summons to appear;" and (3) seeks "discovery of access to review, all admiss[i]ble evidence(s) needed and these copies to be approved for my access."  (Mot. for Access 1.)

First, the court will not "inspect" Lindvald's exhibits; it is unclear what "exhibits" she is speaking of, and this is not the court's duty.  Second, Lindvald's Complaint has now been served on Defendants.  Third, Lindvald may file any affidavits she desires, she does not need a court order to do so. Last, the court will not issue a warrant for Defendants to appear at hearings or trial.  If Defendants fail

2

A hearing was held on July 21, 2006.  Thomas Read, Esq., representative of the Department of Public Safety, and Deputy Attorney General John M. Cregor, Esq., appeared on behalf of Defendants; Lindvald appeared telephonically.  After careful consideration of Lindvald's Amended Complaint and TRO, Defendants' Memorandum in Opposition to the TRO, Lindvald's Motion for Access, and the parties' arguments, this court finds and recommends that Lindvald's Amended Complaint be dismissed pursuant to 28 U.S.C. § 1915A(b)(1), for failure to state a claim, her motions for a temporary restraining order and preliminary injunction be denied,  and her Motion for Access be denied.

## BACKGROUND

Lindvald's Amended Complaint lists eleven counts, although many are simply variations of each other.[5]  The main thrust of Lindvald's claims is her allegation that Defendants Pertzer and Shafiq released her personal medical information to the Hawaii Paroling Authority ("HPA") without her permission.[6]

---

to do so, the court will take action at that time.

[5]The eleven counts are not separately numbered, although Lindvald has numbered the Amended Complaint's pages consecutively, as 4, 4a, 4b, 5, 5a, etc. The court refers to Lindvald's claims as Count 1 through Count 11, according to their consecutive placement in the Amended Complaint.

[6]Lindvald also alleges that Shafiq released her medical records to her Public Defender, and placed her medical records into her institutional files, which she alleges are "public" records.  (Amd. Compl. Counts 1& 2.)

Count 1 alleges that Defendants Pertzer and Shafiq violated the fourth amendment when they introduced her medical records at her parole eligibility hearing without her permission.  Lindvald was subsequently denied parole, and blames Defendants' alleged misuse of her medical records for this denial.  Most of Lindvald's other counts stem from this allegation.

Count 2, a variation of Count 1, alleges that Shafiq violated the fourth amendment when he "seized" information from Lindvald's medical records and introduced this information into "other institutional records, HPA Reports, . . . [and] Public Defenders files."  (Amd. Compl. Count 2, p.4a.)

In Count 3, Lindvald alleges that Pertzer, Shafiq, and Tumminello violated the her right "to petition the Government for a redress of grievances" when they denied her prison grievances.  (*Id.* Count 3, p.4B.); U.S. Const. amend. I.

In Count 4, Lindvald claims Pertzer, DPS officials, DPS medical staff, and Shafiq violated the eighth amendment when she was labeled "as being a person with 'mental Health' Issues."  (*Id.* Count 4, p.5.)  Lindvald alleges this designation subjected her to humiliation, ridicule, and criticism.

In Count 5, Lindvald claims that DPS and Shafiq denied her access to the courts by refusing to release her so that she could clear up traffic violations. Lindvald admits that she has not filed an administrative grievance over this claim.

4

In Count 6, Lindvald claims that Shafiq and DPS employees violated the

first and eighth amendments when they allegedly retaliated against her for filing

grievances.  A careful reading of this claim, however, reveals that Lindvald is

actually complaining that her requests for rehabilitative programs were denied, and

that her grievances protesting this denial were similarly denied.  Lindvald

perceived this as "playing games of false hope" and a violation of the Americans

with Disabilities Act of 1990 ("ADA") and the Rehabilitation Act of 1973.

Lindvald's claims in Count 7 are particularly confusing.[7]  She states that

---

[7]To illustrate the difficulty in deciphering Lindvald's claims, her supporting
facts for Count 7 state:

> There should be no ambiquity (sic) for employees taking
> part: Facts are: the only reason I've been deprived of
> proper and adequate help for a victim of physical, sexual
> abuse, that was even denied protection as a victim almost
> killed, during each, all accounts of those situations
> occuring (sic), is for the fact correctional employee(s)
> had taken part and did engage in those harms caused to
> my life, Failure to Protect a victim occured (sic) Invalidly
> using past criminal history,s , (sic) used to excuse
> employee(s) of harms caused That denied my right to
> equal protection as a victim.  Do have copies of
> greivances (sic) completed, also many copies of reports
> to police, Aiding in denying me help as a victim.  threats
> to human safety.
>                              ***
> Life had been put in serious danger and jeapordy (sic) of
> lost of life, put thru Inhumaine (sic) mistreatment as a
> human being, Person(s) still at large; remain a possible

DPS officials, Pertzer, and Shafiq violated the eighth amendment by their "excessive use of authority." (*Id.* Count 7, p.5c.)  Lindvald alleges that Defendants did not give her "proper and adequate help" as a victim of physical and sexual abuse and "denied [her] right to equal protection as a victim." (*Id.* ¶ 3.)  She complains that the person or persons responsible for her alleged assault have not been prosecuted and remain a threat to her. (*Id.*)  Most disturbing, however, is Lindvald's statement that "correctional employee(s) *had taken part and did engage in those harms* caused to my life." (*Id.*) (emphasis added).  Lindvald then alleges that DPS officials failed to protect her.  It is unclear whether Lindvald is alleging that WCCC prison employees were actually involved in her claims of physical and sexual abuse, or whether she is claiming that prison officials failed to mitigate the effects she suffered as a victim of physical and sexual abuse after she was incarcerated.

In Count 8, Lindvald states that DPS "grievance personnel" violated the fourteenth amendment when they were unresponsive to her grievances

---

threat to my life, due from not being prosecuted, Denied proper help and compensation as a victim incarcerated, put thru more harm, offered drugs for stability, to cause further physical harms.

(Amd. Compl. Count 7, p.5c.)

complaining that Shafiq and Pertzer released her medical records to the HPA.  (*Id.* Count 8, p.6.)  Lindvald alleges that these Defendants denied her rights to be "protected from abuse," apparently referring to Shafiq and Pertzer's actions as "abuse," when no disciplinary action was taken against Shafiq and Pertzer.  (*Id.*)

In Count 9, a variation of Count 7, Lindvald alleges that she was denied "equal protection of the law" when DPS employees failed to provide her with "correct, adequate help as a victim of serious abuse."  (*Id.* 6a.)  She again vaguely alleges that "correctional employee(s) had taken part in physical harms done," but does not explain what she means by this statement.  (*Id.*)  It appears that Lindvald is complaining that she was physically and sexually assaulted *before* she was incarcerated and that, instead of receiving help from the authorities, she was arrested.  It is unclear what connection any named Defendant has to this claim.

In Counts 10 and 11, which are variations on Count 1, Lindvald asserts that Pertzer, Shafiq, and WCCC prison officials violated the fourteenth amendment through their "Abuse of Authority," and by denying her equal protection, when they disclosed her medical records to the HPA.  (*Id.* Count 10, p. 6B & Count 11, p.6C.)  She reiterates her claim that Tumminello denied her "access to complete grievances," and that Defendants denied her rehabilitation programs and support groups and that they expect her to "handle situations by taking drugs."  (*Id.* Count

11, p.6C.)

In her TRO, Lindvald seeks an order preventing prison medical personnel from using her medical records or letters for any purpose, and from making any further decisions about her. Lindvald seeks a preliminary injunction "to assist in disciplinary proceedings for harms that have been caused by corrections use of medical personnel." (TRO at 1.)

In her Motion for Access, although unclear, Lindvald appears to seek an order requiring the prison to allow her more hours in the law library to conduct research.

## LEGAL STANDARD

A federal court must conduct a preliminary screening in any case in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). In its review, the court must identify any cognizable claims and dismiss any claims that are frivolous, malicious, fail to state a claim upon which relief may be granted, or seek monetary relief from a defendant who is immune from such relief. *Id.*; 28 U.S.C. § 1915A(b)(1), (2).

The court must construe *pro se* pleadings liberally and afford the *pro se* litigant the benefit of any doubt. *Morrison v. Hall*, 261 F.3d 896, 899 n.2 (9th Cir. 2001). "'[A] complaint should not be dismissed for failure to state a claim unless it

appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" *Terracom v. Valley Nat'l Bank*, 49 F.3d 555, 558 (9th Cir. 1995) (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)). "Unless it is absolutely clear that no amendment can cure the defect . . . , a *pro se* litigant is entitled to notice of the complaint's deficiencies and an opportunity to amend prior to dismissal of the action." *Lucas v. Dep't of Corr.*, 66 F.3d 245, 248 (9th Cir. 1995); *see also Lopez v. Smith*, 203 F.3d 1122, 1126 (9th Cir. 2000) (*en banc*).

## DISCUSSION

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege two essential elements: (1) that a right secured by the Constitution or laws of the United States was violated; and (2) that the alleged violation was committed by a person acting under color of law. *West v. Atkins*, 487 U.S. 42, 48 (1988).

I.    Official Capacity Defendants are Entitled to Eleventh Amendment Immunity and Are Not Persons Within the Meaning of Section 1983.

Lindvald names all Defendants in their official and individual capacities. The court lacks jurisdiction over Lindvald's claims for damages against Defendants in their official capacities. Those claims are barred by the Eleventh Amendment, which "prohibits federal courts from hearing suits brought against an

unconsenting state." *Brooks v. Sulphur Springs Valley Elec. Coop.*, 951 F.2d 1050, 1053 (9th Cir. 1991) (citation omitted); *see also Idaho v. Couer d'Alene Tribe*, 521 U.S. 261, 267-68 (1997).  Defendants, as state prison officials, are immune from suit for damages in their official capacities.  *See Doe v. Lawrence Livermore Nat'l Lab.*, 131 F.3d 836, 839 (9th Cir. 1997).

Moreover, it is firmly established that neither a state nor its employees acting in their official capacity is considered a "person" under § 1983.  *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 66,(1989); *Bank of Lake Tahoe v. Bank of America*, 318 F.3d 914, 918 (9th Cir. 2003).  Defendants, as state agencies or employees, are not subject to suit under § 1983 for damages in their official capacities.

Accordingly, the court finds and recommends that Defendants be dismissed in their official capacities for all claims for damages against them.  While this order gives Lindvald leave to amend the Amended Complaint, any such submission may not reassert claims dismissed here on the ground that the claims are barred by the Eleventh Amendment or § 1983.  That is, Lindvald may not reassert damage claims against Defendants in their official capacities.[8]

---

[8]The Court notes that, while state officials acting in their official capacities may not be sued in federal court for damages or violations of state law, they may be sued in federal court for prospective injunctive relief sought in connection with

10

II.    Lindvald Has No Right to Parole.

Lindvald complains that Defendants' actions in releasing her medical records resulted in the HPA's denial of parole to her.  Insofar as she is claiming a right to parole, this court finds that a prisoner has no federal constitutional right to parole.  *Greenholtz v. Inmates of Neb. Penal and Corr. Complex,* 442 U.S. 1, 7-11 (1979).  Further, Hawaii's prison regulations and policies do not create a protected liberty interest in parole.  *Neal v. Shimoda*, 905 F. Supp. 813, 818 (D. Haw. 1995).

Moreover, while it is altogether unclear, if the relief Lindvald is seeking is immediate release on parole, such a claim for relief is not cognizable under 42 U.S.C. § 1983 and must be brought in a petition for writ of habeas corpus.  *See Preiser v. Rodriquez,* 411 U.S. 475, 500 (1973) ("when a state prisoner is challenging the very fact or duration of his physical imprisonment, and the relief he seeks is a determination that he is entitled to immediate or speedier release from that imprisonment, his sole remedy is a writ of habeas corpus."); *Butterfield v. Bail*, 120 F.3d 1023, 1024-25 (9th Cir. 1997) (concluding that a § 1983 claim was not cognizable because allegations of procedural defects were clearly an attempt to challenge substantive result in parole hearing).  If these are Lindvald's claims, this

───────────────

alleged violations of federal law.  *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 102 (1984); *Lawrence Livermore Nat'l Lab.*, 131 F.3d at 839.

court finds and recommends that they be dismissed without prejudice to Lindvald's filing a separate action for a writ of habeas corpus alleging these claims.[9]

III.     Count 5 Is Frivolous.

Lindvald claims that Defendants denied her access to the courts when they refused to release her so that she could clear up traffic violations.  This claim is frivolous.  An inmate's right of access to the courts is limited to nonfrivolous, direct criminal appeals, habeas corpus proceedings, and § 1983 actions.  *Lewis v. Casey*, 518 U.S. 343,  353 n.3, 354-55 (1996); *Madrid v. Gomez*, 190 F.3d 990, 995 (9th Cir. 1999).  Lindvald has no right of access to the courts for any other matter, and certainly not to resolve traffic violations.  The court finds and recommends that this claim be dismissed as frivolous without leave to amend.

IV.     Lindvald's Right to Privacy in her Medical Records Claims are Subject to Dismissal.

The gravamen of Lindvald's Amended Complaint is that Defendants'

---

[9]If, however, as it also appears, Lindvald is only challenging the constitutionality of the parole board's procedures, wherein they used her medical records as part of their determination to deny her parole, and she is seeking only a new parole hearing, then that claim may be brought under § 1983.  *See Wilkinson v. Dotson*, 544 U.S. 74, 82 (2005) (holding prisoners can challenge the constitutionality of state parole procedures under § 1983 when success would not result in immediate release or a shorter stay in prison, but would instead mean at most a new parole eligibility review or parole hearing, at which authorities may, in their discretion, decline to shorten a prisoner's term of imprisonment).

Pertzer and Shafiq allegedly released her confidential medical records to the HPA and to her Public Defender, and placed her medical records in her institutional file, without her permission.  (*See* Counts 1, 2, 4, 5, 8, 10, and 11.)  Essentially, Lindvald alleges that Defendants violated her constitutional right to privacy when they submitted her medical evaluations or records to the HPA to aid in their parole determination.  She claims that this release also violated the eighth amendment, by labeling her as a "person with mental health issues" resulting in embarrassment and humiliation, and the fourteenth amendment, by denying her equal protection of the law.

The right to privacy falls under the Due Process Clause and/or the Fourth Amendment, which protects against unreasonable searches and seizures.  *See Whalen*, 429 U.S. at 598 n. 23; *Norman-Bloodsaw v. Lawrence Berkeley Lab.*, 135 F.3d 1260, 1269 (9th Cir. 1998); *Roe v. Sherry*, 91 F.3d 1270, 1274 (9th Cir. 1996); *Doe v. Attorney General of the United States*, 941 F.2d 780, 795 (9th Cir. 1991).  Individuals have a constitutionally protected interest in avoiding disclosure of personal matters, including medical information.  *Whalen v. Roe*, 429 U.S. 589, 599-60 (1977); *Tucson Woman's Clinic v. Eden*, 379 F.3d 531, 551 (9th Cir. 2004).  "The constitutionally protected privacy interest in avoiding the disclosure of personal matters clearly encompasses medical information and its

confidentiality." *Norman-Bloodsaw v. Lawrence Berkeley Lab.*, 135 F.3d 1260, 1269 (9th Cir. 1998).

However, "[t]he right to informational privacy is not absolute; rather, it is a conditional right which may be infringed upon a showing of proper governmental interest." *Tucson Woman's Clinic*, 379 F.3d at 551 (citing *Planned Parenthood of Southern Arizona v. Lawall*, 307 F.3d 783, 790 (9th Cir. 2002). Thus, requiring the disclosure of medical records "to representatives of the State having responsibility for the health of the community, does not automatically amount to an impermissible invasion of privacy." *Whalen*, 429 U.S. at 602 ("In recognition that the right of an individual to control access to her or his medical history is not absolute, courts and legislatures have determined that public health or other public concerns may support access to facts an individual might otherwise choose to withhold."). The right to privacy of medical information is even less secure when the individual in question is an inmate. *See Hudson v. Palmer*, 468 U.S. 517, 526 (1984) (discussing inmate's right to privacy in their cells under the fourth amendment). As the United States Court of Appeals for the Third Circuit cautions, "a prisoner does not enjoy a right of privacy in his medical information to the same extent as a free citizen." *Doe v. Delie*, 257 F.3d 309, 315-317 (3rd Cir. 2001). A prisoner's constitutional right to privacy, including the preservation of the

14

confidentiality of medical information, "is subject to substantial restrictions and limitations in order for correctional officials to achieve legitimate correctional goals and maintain institutional security." *Id.* In other words, the disclosure of an inmate's private medical records must be "reasonably related to a legitimate penological interest[]." *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 349 (1987) (quoting *Turner v. Safley*, 482 U.S. 78, 89 (1987)).

To determine when the government's interest in obtaining information outweighs the individual's privacy interest, the court balances four factors:

> (1) the type of information requested, (2) the potential for harm in any subsequent non-consensual disclosure, (3) the adequacy of safeguards to prevent unauthorized disclosure, (4) the degree of need for access, and (5) whether there is an express statutory mandate, articulated public policy, or other recognizable public interest militating toward access.

*Tucson Woman's Clinic*, 379 F.3d at 551.

The Hawaii Revised Statutes delineate the parameters of prisoner privacy to allow the maximum amount of access to the HPA. Chapter 353-11 provides for full access to the HPA to *all* records and books kept by correctional facilities in the State. Haw. Rev. Stat. § 353-11(a) (emphasis added). Medical and mental health records clearly fall within this description, as the Department of Corrections is responsible for providing medical and mental health services to inmates. *See* Haw.

Rev. Stat. §§ 353-13 & 353-13.3.  Even if an inmate elects to be treated by a

private psychologist, that psychologist is bound to "provide timely reports to the

department" regarding the prisoner's physical or psychological progress.  Haw.

Rev. Stat. § 353-13.5.  Furthermore, § 353-66 specifically authorizes the HPA's

reliance upon the findings of a psychiatrist's or psychologist's recommendation for

the revocation of parole.  *See* Haw. Rev. Stat. § 353-66.

Taking into consideration the *Tuscon Woman's Clinic* factors, it is clear that

Lindvald has no protected privacy right in her prison medical records.  First, DPS

representative Thomas Read stated at the hearing that an inmate's medical records

are confidential except where their disclosure is allowed by statute.  Kim Isaac, the

Otter Creek medical administrator, substantiated that the only persons at the prison

with access to an inmate's medical files are the prison medical staff, and only on a

need to know basis.  Moreover, the unauthorized disclosure of Lindvald's medical

records, is not at issue.  Lindvald does not allege that her records were disclosed to

unauthorized individuals.  She complains that the prison maintains such records at

all, and that the HPA and her own Public Defender, had access to them at her

parole hearing.  Disclosure of her records at her parole hearing, however, and their

placement in her prison file, are clearly authorized by statute.

As to the second *Tuscon Woman's Clinic* factor, and taking Lindvald's

16

allegations in the light most favorable to her, the court concedes that a subsequent non-consensual disclosure of her mental health records to unauthorized persons could cause distress and harm to her.  As discussed below, however, the State's compelling governmental interest in the protection of the public clearly outweighs both of these factors.

The HPA is committed to granting parole to eligible individuals only when the element of risk to the community is minimal and release is compatible with the welfare and safety of society.  *See* Haw. Rev. Stat. §§ 353-62 and 353-69.  The Department of Public Safety's medical officers are required by statute to examine any inmate and to establish and maintain prison medical records.  *See* Haw. Rev. Stat. § 353-13.  The Department is also responsible for providing mental health services to inmates.  *See* Haw. Rev. Stat. § 353-13.3.  All records generated in the course of providing medical or mental health care are reviewable by, and in fact, are necessary to, the HPA prior to or during a parole determination hearing.  *See* Haw. Rev. Stat. § 353-11.  Such access to Lindvald's mental health records for the determination of whether parole is appropriate is directly related to the HPA's interest in ensuring the safety of the community.  Thus, the HPA's need for access to such information is great, and the express statutory mandate authorizing the release of these types of records to the HPA for the protection of the community

17

clearly outweighs Lindvald's privacy interest in them.  Further, in order for Lindvald's Public Defender to advocate effectively in her behalf, it is manifestly clear that he or she must have full access to any records that will be reviewed at her parole hearing.  Lindvald provides no evidence, either at the hearing or in her papers and pleadings, that she declined to be represented by her Public Defender. She simply complains that her medical records were released at her parole hearing. The court finds that the prison's establishment and maintenance of Lindvald's medical records, and the disclosure of those medical records to the HPA and to her Public Defender at her parole hearing violated no constitutional right or privilege. Lindvald has failed to state a claim in connection with the establishment or disclosure of her prison medical records at her parole hearing.

Lindvald also alleges that the disclosure of her medical records at her parole hearing violated the eighth amendment by causing her humiliation and embarrassment.  (*See* Amd. Compl. Count 4 p.5.)  As stated above, the right to privacy falls under the Due Process Clause and/or the fourth amendment's protection against unreasonable searches and seizures.  Nonetheless, even analyzing this claim under the eighth amendment's proscription against cruel and unusual punishment, it fails.  First, pursuant to 42 U.S.C. § 1997e(e), "[n]o Federal civil action may be brought by a prisoner confined in a jail, prison, or other

correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury." Within the Ninth Circuit, this requires "a prior showing of physical injury that need not be significant but must be more than *de minimis*." *Oliver v. Keller*, 289 F.3d 623, 627 (9th Cir.2002). Lindvald presents no evidence of physical injury resulting from the release of her medical records. Lindvald does not make specific allegations regarding physical injuries. Section 1997e(e) by its terms requires a showing of some prior physical injury, which Lindvald has not established.

Second, verbal harassment or abuse is insufficient to state a constitutional deprivation under 42 U.S.C. § 1983. *Oltarzewski v. Ruggiero*, 830 F.2d 136, 139 (9th Cir.1987). Therefore, Lindvald's allegations of suffering embarrassment, humiliation, and ridicule due to the release of her medical records to State and prison officials, do not state a claim under § 1983.

Lindvald also claims that the release of her records violated her right to equal protection under the law. The Equal Protection Clause provides that no state shall "deny to any person within its jurisdiction the equal protection of laws." U.S. Const. amend XIV, § 1. However, a statute or regulation that "neither burdens a fundamental right nor targets a suspect class" does not violate the Equal Protection Clause if the "classification . . . bears a rational relation to some legitimate end."

19

*Romer v. Evans*, 517 U.S. 620, 631 (1996). To state a § 1983 claim based on a violation of the Equal Protection Clause, a plaintiff must show that the defendant discriminated against the plaintiff or against a class of individuals that included the plaintiff. *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000); *Reese v. Jefferson Sch. Dist. No. 14J*, 208 F.3d 736, 740 (9th Cir. 2000); *Barren v. Harrington*, 152 F.3d 1193, 1194 (9th Cir. 1998) ("A plaintiff must allege facts, not simply conclusions, that show that an individual was personally involved in the deprivation of his civil rights.").

The statute authorizing the Department of Corrections to maintain medical records on its inmates, and authorizing the release of those records to the HPA neither targets a suspect class, discriminated against Lindvald, nor burdened a fundamental right. First, inmates are not members of a suspect class. *Webber v. Crabtree*, 158 F.3d 460, 461 (9th Cir. 1998). Nor are the mentally ill considered a suspect class. *See City of Cleburne v. Cleburne Living Center*, 473 U.S. 432, 445-46(1985) (holding that mentally retarded do not constitute suspect class and stating in dicta that mentally ill are not suspect class). Second, Lindvald alleges no facts supporting a finding that Defendants intentionally discriminated against her, or treated her differently than any other similarly situated inmate, by releasing only her medical records to the HPA.

20

Finally, as detailed above, Lindvald has no fundamental constitutional right to privacy in her medical records if there is a compelling governmental interest in the release of those records.  In other words, a statute aimed at protecting the public by authorizing the release of a prisoner's medical records to the parole board, with the stated aim of the protection of the public, bears a rational relation to a legitimate end and does not violate the Equal Protection Clause.

Accordingly, this Court finds and recommends that Lindvald's claims in Counts 1, 2, 4, 8, 10, and 11, relating to Defendants release of her mental health records, be dismissed for failure to state a claim.

V.      Lindvald's Claims in Counts 3, 6, 8, and 11 Fail to State a Claim.

Counts 3, 6, 8, and 11 (in part) all relate to problems Lindvald alleges she encountered with the prison's handling of her grievances.  In Counts 3 and 11, Lindvald alleges that Tumminello violated her first amendment right to petition the government for redress of grievances when he denied her prison administrative grievances, and "denied [her] access to complete grievances."  (Amd. Compl. Count 11 p.6C.)

The Constitution does not require that a prison provide a formal grievance procedure nor adhere to their own procedures if they establish one.  *Mann v. Adams*, 855 F.2d 639, 640 (9th Cir. 1988) (holding that a prisoner has no

constitutional right to prison grievance procedures); *see also Alvarado v. Litscher*, 267 F.3d 648, 651 (7th Cir. 2001); *Apple v. Glenn*, 183 F.3d 477, 479 (6th Cir. 1999) ("A citizen's right to petition the government does not guarantee a response to the petition or the right to compel government officials to act on or adopt a citizen's views.")   Thus, even if Tumminello denied Lindvald the right to "complete grievances," presumably by refusing to give her the result she desired, he violated no constitutionally protected right in doing so.

Moreover, while "the First Amendment right to petition the government for a redress of grievances protects a person's right to complain to the government that the government has wronged him, [] it does not require that a government official respond to the grievance." *Jones v. Brown*, 300 F. Supp. 2nd 674, 679 (N.D. Ind. 2003).   Similarly, while Lindvald has a right to petition the prison through her grievances, she has no right to a positive response or outcome to those grievances. Simply because Tumminello denied her grievance, stating that he felt the matter was resolved, does not violate the first amendment.   Accordingly, the court finds and recommends that Counts 3 and 11 be dismissed for failure to state a claim.

In Count 8, Lindvald complains that Defendants denied her grievances demanding that Shafiq and Pertzer be disciplined for releasing her medical records. This claim fails for two reasons.   First, as discussed above, while Lindvald may file

a grievance she has no right to the outcome she demands simply because she demands it.  Second, as there was no privacy violation in releasing her records to the HPA, there is no basis for disciplining Shafiq and Pertzer.  The court finds and recommends that Count 8 be dismissed as both frivolous and for failure to state a claim.

In Count 6, Lindvald alleges that Defendants denied her "access to programs" and then retaliated against her for filing grievances, by denying her requests to be put in rehabilitation programs.[10]  She states that the grievances she filed were requests to be put in rehabilitation programs.  Lindvald then maintains that Defendants' actions, in denying her "grievances" requesting rehabilitation programs, violated the first and eighth amendments as well as the ADA and the Rehabilitation Act .

It is firmly established that prisoner's have no constitutional right to rehabilitation.  *See Coakley v. Murphy*, 884 F.2d 1218, 1221 (9th Cir. 1989); *Rizzo v. Dawson*, 778 F.2d 527, 531 (9th Cir. 1985).  Moreover, "[o]nly the unnecessary and wanton infliction of pain implicates the Eighth Amendment."  *Farmer v. Brennan*, 511 U.S. 825, 834 (1994).  To prevail on an eighth amendment claim, an

---

[10]Apparently, Lindvald sought to be allowed to attend programs both inside and outside of the prison.  (*See* Amd. Compl. Count 6, p.5B.)

inmate must show that the prison official's acts or omissions deprived him of the minimal, civilized measure of life's necessities, and that the prison official acted with deliberate indifference. *Lopez v. Smith*, 203 F.3d 1122, 1133 (9th Cir. 2000) (citation omitted). "Idleness and the lack of [vocational and rehabilitative] programs" do not violate the Eighth Amendment. *Hoptowit v. Ray*, 682 F.2d 1237, 1254-55 (9th Cir. 1982); *see also Toussaint v. McCarthy*, 801 F.2d 1080, 1106-08 (9th Cir. 1986). "The lack of these programs simply does not amount to the infliction of pain." *Id.* at 1255 (citing *Rhodes v. Chapman*, 452 U.S. 337, 346 (1981).

Defendants' denial of Lindvald's requests to attend rehabilitative programs violated no constitutional right. Further, Defendants' denial of grievances protesting this denial cannot be construed as retaliation. Nor does Lindvald provide any facts that support a retaliation claim; she is simply making unsupported conclusory allegations that because she was denied rehabilitation programs, it must have been retaliatory.

To the extent that Lindvald is attempting to state a claim under either the ADA or the Rehabilitation Act, she has failed to do so. To state a *prima facie* claim under the ADA, a plaintiff must show: 1) She is a person with a disability as defined by statute; 2) She is otherwise qualified for the benefit in question; and 3)

She was excluded from the benefit due to discrimination based upon disability. *See* 42 U.S.C. § 12131 et seq.  Lindvald presents no factual allegations indicating she is qualified as disabled under the ADA, *see* 42 U.S.C. § 12132; 29 C.F.R. § 1630.2(j), or that named Defendants denied her the benefit of any services, programs, or activities based on her alleged disability, *see Duffy v. Riveland*, 98 F.3d 447, 455 (9th Cir. 1995).  In fact, Lindvald protests throughout her Amended Complaint that she is not mentally ill, and thus, is not disabled.  As such, she fails to state a claim under either Act.  Accordingly, this court finds and recommends that Count 6 be dismissed for failure to state a claim.

## VI.    Counts 7 & 9 Fail to State a Claim.

Lindvald's claims in Counts 7 and 9 are particularly confusing.  She states that these claims involve the "Excessive abuse of authority," and alleges that Defendants violated the eighth and fourteenth amendments.  (*See* Amd. Compl. Count 7 (stating Defendants "denied my right to equal help and protection as a victim") & Count 9 (stating "Denied guaranteed equal protections of the law.")  The supporting facts, however, are rambling, disjointed, and very difficult to understand.  As written, it is impossible to discern if Lindvald is claiming to have been sexually and physically assaulted *prior* to her incarceration, and that she is now complaining that Defendants have failed to provide her with "correct,

adequate help as a victim of serious abuse," or if she is claiming that unnamed WCCC employees actually took part in the alleged sexual abuse, and that Defendants somehow failed to protect her.

At the hearing, the court asked Lindvald to clarify these claims.  Although still somewhat confusing, it became obvious Lindvald is not alleging that any prison employee was involved in the sexual or physical abuse of which she complains.  Lindvald stated that she was followed, or harassed, and possibly sexually or physically abused, by a person she prefers not to identify, prior to her arrest and subsequent incarceration at WCCC.  Lindvald alleged that she reported this to "Joe Desmarets," who did not offer her adequate help.[11]  Lindvald then apparently went to the police with her allegations and, rather than acting on her claims, she was arrested, presumably on an outstanding warrant.

It is clear that Lindvald is not claiming that any Defendant or WCCC official was involved in this alleged harassment or sexual/physical abuse.  She is simply complaining that, first, when she reported the alleged abuse to Desmarets, Desmarets was unhelpful.  Then, when she went to the police, or "Authorities," rather than investigate her claims, they arrested her.  Then, once she was in

---

[11] From the record, it appears that Desmarets was Lindvald's parole officer. (*See* Docket No. 33, "Deposition Subpoena" naming Desmarets and seeking parole records in Desmarets' possession.)

custody, prison officials did not provide her with the help she felt she was entitled to, to help deal with this alleged abuse.  With this clarification, this court finds that there remain several infirmities with Counts 7 and 9.

First, Rule 8 of the Federal Rules of Civil Procedure requires a "short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  Although the Federal Rules adopt a flexible pleading policy, a complaint must give fair notice and state the elements of the claim plainly and succinctly.  *Jones v. Community Redev. Agency*, 733 F.2d 646, 649 (9th Cir. 1984).  "The Federal Rules require that averments 'be simple, concise and direct.'" *McHenry v. Renne*, 84 F.3d 1172, 1177 (9th Cir. 1996) (quoting Fed. R. Civ. P. 8(e)(1)).  Simply put, "[a]ll that is required [by Fed. R. Civ. P. 8(a)] is that the complaint gives 'the defendant fair notice of what the plaintiff's claim is and the ground upon which it rests.'"  *Kimes v. Stone*, 84 F.3d 1121, 1129 (9th Cir. 1996) (quoting *Datagate, Inc. v. Hewlett-Packard Co.*, 941 F.2d 864, 870 (9th Cir. 1991)).  Counts 7 & 9 are so vague, confusing, and conclusory that the court is unable to determine whether they are frivolous or fail to state a claim for relief.  Lindvald must allege with at least some degree of particularity overt acts which Defendants engaged in that support these claims.  Because these claims do not contain a short and plain statement, Lindvald has failed to comply with the

requirements of Fed. R. Civ. P. 8(a)(2), and Counts 7 & 9 must be dismissed.

Second, to plead an equal protection violation, as Lindvald alleges, a plaintiff must allege she has been treated differently from others with whom she is similarly situated and that the unequal treatment was the result of intentional or purposeful discrimination. *Freeman v. Arpaio*, 125 F.3d 732, 737 (9th Cir. 1997). Lindvald has utterly failed to link her factual allegations, such as they are, to her legal claims. *See McHenry v. Renne*, 84 F.3d 1172, 1179-80 (9th Cir. 1996). Lindvald fails to allege any facts showing that Defendants intentionally discriminated against her, or treated her differently than any other similarly situated inmate.

Finally, and most important, putting aside the issue of whether any named Defendant owed Lindvald a duty to investigate her claims of sexual or physical abuse which allegedly occurred prior to her incarceration, Lindvald's own statements in her Amended Complaint contradict her claims that Defendants failed to provide her with adequate care "as a victim," or were deliberately indifferent to her need for counseling or mental health care. The "[d]enial of medical attention to prisoners constitutes an eighth amendment violation if the denial amounts to deliberate indifference to serious medical needs of the prisoners." *Toussaint v. McCarthy*, 801 F.2d 1080, 1111 (9th Cir. 1986). However, Lindvald commenced

this action partly because she disagrees with the mental health care she received, and the mental health care providers' assessments and recommendations which are in her medical records, and upon which the HPA relied.  The Amended Complaint is replete with statements that she met with prison mental health care providers.[12] Lindvald repeatedly complains that they misdiagnosed her, or that they only want to medicate her.  While she may disagree with these conclusions or proposed treatment plans, and while she may be unhappy with the prison's  alleged failure to address her needs in the manner she would like, and argues that they allegedly violated the eighth amendment and "denied her right to equal help and protection as a victim," there is no dispute that Defendants provided mental health care or counseling services to Lindvald at WCCC.  It is well-settled that a difference of opinion between a physician and the prisoner concerning the course of treatment or diagnosis does not amount to deliberate indifference.  *Jackson v. McIntosh*, 90 F.3d 330, 332 (9th Cir. 1996).

Moreover, Lindvald has now filed a motion for a temporary restraining order

---

[12]*See* Count 1 ("those [medical] reports came from the social worker at [WCCC]"); Count 4 ("I have been humiliated, ridiculed and criticized as being a person with 'mental health' issues by my trusting to of talked to the [prison] Psychologist about prior serious abuse problems"); Count 8 ("After gaining illegal access from [DPS] medical personnel; Dr. Pertzer"); Count 10 ("I'd seen Dr. Pertzer").

or preliminary injunction specifically to restrain Defendants from providing her with any further counseling or mental health care.  At the hearing, Defendants' witness, Shawna Newsom, a medical administrator at Otter Creek, stated that Lindvald was offered the opportunity for counseling when she arrived in Kentucky, and did in fact speak with the counselor there.  Lindvald then became upset and has since refused counseling.  It is obvious that Lindvald was provided counseling services while at WCCC and that she has access to such care at Otter Creek.  She has now refused further care.  The court finds that Lindvald had access to counseling services and mental health care while she was at WCCC, and also has access to such care at Otter Creek, and has thus, failed to state a claim for the denial of such care.  Accordingly, for all of these reasons, the court recommends that Counts 7 and 9 be dismissed.

VII.   Lindvald's Motions for Temporary Restraining Order and Preliminary
       Injunction Should be Denied.

       Lindvald seeks a temporary restraining order preventing prison medical personnel from seeing or having contact with her, and apparently, from using or examining her medical records.  She vaguely alleges that allowing prison medical staff to examine her or her medical records would continue to damage or injure her.  She does not provide any specific instances where prison medical personnel have

30

forced her to submit to medical treatment or examination.

Defendants oppose such broad injunctive relief, arguing that pursuant to Haw. Rev. Stat. § 353-13, the Department of Public Safety's medical officer, in this case medical personnel at Otter Creek, is required to thoroughly examine any detainee at a state correctional facility and keep medical records from the initial examination and of all subsequent examinations. Defendants argue that Lindvald has failed to provide any evidence of irreparable harm, with the probability of success on the merits of her action, and a lack of an adequate remedy at law. Additionally, Defendants maintain that the balance of harm tilts decidedly in their favor, considering their statutory obligation to provide medical care for inmates and the liability they might incur for failing to provide such care and fulfill that duty.

At the hearing, Lindvald admitted that she has refused counseling treatment at Otter Creek, although she praised the medical care available. Ms. Newsom stated that, once Lindvald refused Otter Creek's counseling services, she has not been forced to attend counseling or other mental health treatment. Lindvald agreed that she had not been forced to participate against her will in mental health care.

The standard for granting a temporary restraining order is identical to that for a preliminary injunction. *Haw. County Green Party v. Clinton*, 980 F. Supp.

31

1160, 1164 (D. Haw. 1997).  To obtain either, a party must demonstrate:  (1)

probable success on the merits and irreparable injury; or (2) sufficiently serious

questions going to the merits to make the case a fair ground for litigation, with the

balance of hardships tipping decidedly in favor of the party requesting relief.[13]

*Topanga Press, Inc. v. City of Los Angeles*, 989 F.2d 1524, 1528 (9th Cir. 1993).

Should a moving party fail to demonstrate any chance of success on the merits, a

court may disregard the determination of potential injury or a balancing of

hardships and deny the injunction.  *Arcamuzi v. Continental Air Lines, Inc.*, 819

F.2d 935, 937 (9th Cir. 1987); *Sports Form, Inc. v. United Press International,

Inc.*, 686 F.2d 750, 753 (9th Cir. 1982).

As a competent adult, Lindvald retains the right to refuse medical treatment,

including counseling.  *See Cruzan v. Director, Missouri Dep't of Health*, 497 U.S.

261 (1990).  Moreover, a prisoner "possesses a significant liberty interest in

avoiding the unwanted administration of" mental health treatment.  *Washington v.

Harper*, 494 U.S. 210, 221-22 (1990); *Ingraham v. Wright*, 430 U.S. 651, 673

---

[13]  Traditionally, there were four factors to be considered in deciding whether an injunction or restraining order should issue: 1) the likelihood of the plaintiff's success on the merits; 2) the threat of irreparable harm to the plaintiff if the injunction is not imposed; 3) the relative balance of the harm to the plaintiff and the harm to the defendant; and 4) the public interest.  *Alaska v. Native Vill. of Venetie*, 856 F.2d 1384, 1388 (9th Cir. 1988).  These factors have been collapsed into the current test.  *See id.* at 1388-89.

(1977).  It is settled, however, that prison inmates only retain those constitutional rights that are not inconsistent with their status as prisoners or with the legitimate penological objectives of the corrections system.  *Turner v. Safley*, 482 U.S. 78(1987) (quoting *Pell v. Procunier*, 417 U.S. 817, 822(1974)).  The Supreme Court in *Harper* held that the due process clause permits the state to treat an inmate with anti-psychotic drugs against his will, as long as the procedures necessary to satisfy due process are satisfied.  *Harper*, 494 U.S. at 232-36 (finding that the basic requirements of notice, the right to be present at an adversary hearing, and the right to present and cross examine witnesses must be met).

As discussed in great detail above, Lindvald's likelihood of success on the merits of this action are exceedingly slim.  Lindvald fails to state a claim as to her right to the privacy of her prison medical records, a right to parole, a right to rehabilitation programs, a right of access to the court, as well as for eighth amendment violations, or as to her allegations of discrimination.  Nor has Lindvald shown that she will suffer irreparable injury.

Moreover, it is clear that Lindvald is not being forced to accept counseling or other mental health care against her will.  Thus, Lindvald's assertions do not present an actual case or controversy at this time.  In sum, Lindvald has failed to establish any basis for issuing a temporary restraining order or preliminary

33

injunction.  As such, this court finds and recommends that the motion for

temporary restraining and preliminary injunction be DENIED.

VIII.  <u>Lindvald's Motion for Access is Denied.</u>

At the hearing, Defendants presented evidence that the Otter Creek law

library is open to any inmate seven days a week, from 7:30 a.m. to 10:30 a.m. and

again from 4:00 p.m. to 6:30 p.m.  It is also available by appointment from 11:30

a.m. to 2:30 p.m.  Otter Creek's law librarian, Shawna Newsom, stated that,

between June 21, 2006, and July 7, 2006, Lindvald attended the law library daily.

Lindvald did not dispute this, but complained that she is sometimes too late to

make an appointment for the 11:30 to 2:30 sessions, and that some of the inmate

law librarians are unhelpful.  She also complained that she was not allowed to

browse the law library stacks without being accompanied by law library staff and

that sometimes she is not allowed to use the typewriter.

This court finds that Lindvald has adequate access to the law library.  She

has missed no filing deadlines and her handwritten papers are legible, negating her

complaints about inadequate access to the typewriter.  Accordingly, the court

recommends that Lindvald's Motion for Access be denied.

## CONCLUSION

The court FINDS AND RECOMMENDS that:

1.  Lindvald's Amended Complaint be DISMISSED for failure to state a claim, pursuant to 28 U.S.C. § 1915A(b)(1) & § 1915(e)(2)(B).

2.  Lindvald's Motion for a Temporary Restraining Order be DENIED.

3.  Lindvald's Motion for Access to the law library be DENIED.

4.  Lindvald be granted **thirty [30] days from the date of adoption of this order** to file an amended complaint in accordance with the directions of this findings and recommendation to cure the deficiencies of her claims, if possible. Failure to amend the Amended Complaint within thirty days, or failure to sufficiently cure the deficiencies in her claims, will result in DISMISSAL of this action with prejudice for failure to state a claim. **This dismissal shall count as a strike pursuant to 28 U.S.C. § 1915(g)**.

5. The Clerk is DIRECTED to send Lindvald a prisoner civil rights complaint form so that she may amend her Amended Complaint.  If Lindvald decides to amend the Amended Complaint in accordance with this order, the amended complaint must "reproduce the entire pleading as amended and may not incorporate any part of a prior pleading by reference."  Local Rule LR10.3.  The

document must bear the docket number assigned this case and must be clearly

labeled "Third Amended Complaint."

IT IS SO FOUND AND RECOMMENDED.



/s/ Barry M. Kurren
United States Magistrate Judge
Dated: July 24, 2006

Lindvald v. Dept. Pub. Safety, et al., CV 06-00011 JMS-BMK; FINDINGS AND RECOMMENDATION TO DISMISS AMENDED COMPLAINT AND DENY MOTIONS FOR TEMPORARY RESTRAINING ORDER, PRELIMINARY INJUNCTION, AND ACCESS TO THE LAW LIBRARY; dmp\ screening orders\ Lindvald 06-11(dsm amd C and dny TRO)